GRAEM YATES, DOING BUSINESS AS GRAEM YATES ADVERTISING v. W. F. MICKEY BODY COMPANY, INC.

(Filed 31 October 1962.)

**1. Contracts §§ 21, 27; Quasi-Contracts § 2—**

Where defendant's own evidence discloses that he used 1000 of the 5000 catalogs printed by plaintiff, defendant is not entitled to nonsuit in plaintiff's action to recover the contract price, even though defendant denies the alleged contract, since defendant, having accepted and used a portion

of the catalogs, would be liable for the portion used upon *quantum meruit* even in the absence of an express contract.

**2. Contracts § 21;   Quasi-Contracts § 2—**

If the printer delivers printed catalogs according to the final proof approved by the purchaser, the printer is entitled to recover the contract price, or, if there were no contract, the reasonable value of the catalogs furnished in accordance with the purchaser's specifications, regardless of whether the purchaser liked the catalogs and irrespective of whether the catalogs were useful or not; if the printing of the catalogs was not in accordance with the specifications, the purchaser is entitled to reject them, but if the purchaser uses any number of them he is liable for the reasonable value of the portion used.

**3. Contracts § 25;   Quasi-Contracts § 2—**

While a cause of action on an express contract and on an implied contract should be separately stated, recovery may be had upon *quantum meruit* upon a complaint alleging an express contract and the delivery of goods thereunder of a stipulated reasonable value.

**4. Same—**

Where the allegations and evidence are sufficient to support recovery upon an express contract and upon an implied contract, the court should submit separate issues directed to the two theories of liability.

**5. Trial § 40—**

If the pleading and evidence raise several issues, the submission of the single issue as to the amount, if any, plaintiff is entitled to recover, is not good practice.

**6. Contracts § 25—**

Where defendant in an action on a contract relies upon breach of the contract by plaintiff, defendant should deny plaintiff's allegations of due performance and allege the facts constituting the breach, and tender an issue relating thereto.

**7. Contracts § 23—**

If the catalogs purchased by defendant were not printed in accordance with the specifications, the fact that the purchaser uses a portion of the catalogs in an emergency does not preclude the purchaser from rejecting the remainder of the catalogs.

**8. Trial § 33—**

It is error for the court to fail to apply the law to the various aspects of the case presented by the evidence.

APPEAL by defendant from *Sink, E. J.* at April 23, 1962 Special "A" Civil Term of MECKLENBURG.

This is a civil action to recover damages for breach of contract. Plaintiff is the proprietor of an advertising agency; the defendant corporation manufactures truck bodies for delivering beverages.

Plaintiff alleges that on or about March 22, 1961, he and defendant entered into a contract "under the terms and in the full performance of which plaintiff caused to be printed and delivered to the defendant 5,000 catalogs created, designed, written, and prepared by plaintiff, . . . and duly approved by defendant"; that "pursuant to the contract" on or about March 28, 1961, plaintiff submitted an invoice to the defendant in the amount of $4,461.43 which defendant has refused to pay. Plaintiff prays judgment for this amount with interest from March 28, 1961.

Answering, the defendant admitted the receipt of a portion of the catalogs immediately prior to the departure of its sales force to a convention in Miami where the catalogs were to be distributed. However, defendant alleged that "the catalogs were incomplete and inaccurate for the purposes for which the defendant had intended using the catalogs"; that defendant immediately advised plaintiff of the omissions and told him to stop the printing but, notwithstanding, plaintiff printed the remaining 4,000 catalogs. Defendant denied that the parties ever reached a definite and final agreement with reference to the price of the catalogs. It alleged that plaintiff was entitled to recover nothing.

On the trial, plaintiff offered evidence which tended to show the following facts:

As a result of negotiations which began in the summer of 1960, and after the preparation of two "working dummies", plaintiff submitted the final proof of a sales catalog to defendant about March 20, 1961. Carl Mickey, president of the defendant, made a few minor corrections and told the plaintiff that defendant would need a partial shipment of catalogs by April 5, 1961, for use at a convention in Miami. Between March 22, 1961, and April 1, 1961, more changes had to be made in the proof. These were reviewed with Mr. Mickey and final instructions were given the printer on March 23, 1961. Thereafter on March 28, 1961, plaintiff submitted to the defendant an invoice in the amount of $4,461.43. On October 27, 1960, plaintiff had given defendant an estimate of the total cost for 5,000 catalogs containing both twelve pages and sixteen pages. The final billing in March was increased by the addition of color, plates, and by typography changes made on the instructions of Mr. Mickey. On April 5, 1961, according to its instructions, 1,000 catalogs were delivered to the defendant in High Point. On the same day Mr. Mickey telephoned plaintiff that page numbers had been omitted. He requested that plaintiff call the printer to determine whether all of the catalogs had been printed. At that time he made no other complaint. He told plaintiff he had decided to take the delivered catalogs with him to Miami and, upon

his return, would discuss with him the disposition of the other 4,000 catalogs.

At the time Mr. Mickey called plaintiff, the printer had already folded and stitched the remaining 4,000 catalogs. To have numbered the pages would have increased the cost $1,337.00 Hearing nothing further from the defendant, plaintiff had the remaining 4,000 catalogs delivered and requested payment. Defendant's president advised that the catalogs were not satisfactory because the pages were not numbered.

The delivered catalog contained twelve pages in addition to the cover pages — sixteen pages, counting front and back as two pages each. Page three purported to be an index page. On it were seven questions and the information that the answers could be found on various pages from four to fourteen. Since they were not numbered, in order to find the answers to the questions, it was necessary to count the pages. Plaintiff testified, "The entire catalog is based upon a very unusual index which was one of the teasing points that we were putting in the catalog. . . The working dummy did not have particular pages numbered . . . . Mr. Mickey personally reviewed each working dummy and each proof and all changes he requested were made."

The defendant's evidence tended to show that at a conference between plaintiff, Mr. Mickey, and the defendant's sales manager about the working dummy, it was agreed that the pages should be numbered, and the sales manager penciled the numbers on the onion skin overlay of the second working dummy at the place where the page numbers were to go. On the trial, defendant also contended that certain color with which defendant had promised to brighten the page advertising a roll-up door had been omitted.

Defendant's salesmen took the 1,000 catalogs to Miami but made no use of the remaining 4,000. Mickey testified that the price plaintiff quoted in October was acceptable; that he had requested him to send the invoice so that defendant could have it for March billing. He testified, "(T)he amount of the invoice was more than we had discussed originally. I didn't particularly like it, don't misunderstand, but I knew it was justified."

One issue, "What amount, if any is the plaintiff entitled to recover of the defendant?" was submitted to the jury without objection by the defendant. It was answered "$4,461.43 plus interest at 6% from March 28, 1961." From judgment entered on the verdict the defendant appealed assigning as error the action of the court in overruling its motion for nonsuit and omissions and commissions in the charge.

*Robert L. Scott for plaintiff appellee.*
*Warren C. Stack for defendant appellant.*

SHARP, J. Neither the pleadings nor the evidence clearly delineates this controversy. The submission of but one issue further blurred the picture and made the charge to the jury an extremely hazardous judicial operation.

The plaintiff's complaint, we believe, was intended to allege an express contract by defendant to pay $4,461.43 for the 5,000 catalogs in question. In its answer, defendant denied the contract as alleged in the complaint as well as plaintiff's performance of it. Defendant denied any agreement to pay a specific amount for the catalogs but alleged that it was ready, willing, and able to pay a reasonable sum for "proper and satisfactory catalogs." However, the most direct evidence of an express contract came from the defendant's president when he testified that the amount of the March invoice, sent at his request before the catalogs were delivered, "was justified." While alleging that "serious omissions and difficulties" in the catalogs caused it to reject 4,000 of them, defendant's evidence establishes that it did use 1,000 of the catalogs. Notwithstanding, defendant denied that plaintiff was entitled to recover any amount and excepted to the failure of the court to nonsuit plaintiff's entire claim.

Certainly the defendant was not entitled to receive the 1,000 catalogs as a gift from the plaintiff. The motion for nonsuit was correctly overruled.

The plaintiff contends that the defendant ordered 5,000 catalogs; that they were printed according to specifications or "a dummy" approved by defendant's president; and that he is entitled to recover for the 5,000. If plaintiff proves this by the greater weight of the evidence, plaintiff would be entitled to recover the stipulated price if there were one; the reasonable value, if there were none. If the catalogs were not printed according to the proof, plaintiff would not be entitled to recover for the 4,000 rejected. It is implicit in the dealings between these parties that the plaintiff was to furnish catalogs according to the final proof approved by the defendant. If that proof contained page numbers and color which did not appear in the printed catalog then plaintiff did not perform his contract. If the catalogs were printed according to the approved dummy, then defendant is obligated to pay for 5,000 of them whether its president liked the finished product or not, and irrespective of whether the catalog promoted sales at the convention or elsewhere. *Gills Lithographic & Liberty Printing Co. v. Chase et al.*, 149 Mass. 459, 21 N.E. 765, 4 L.R.A. 480; *Harris v. Sharples*, 202 Pa. 243, 51 A 965, 58 L.R.A. 214. In any event, the plaintiff would be entitled to recover the reasonable value of the 1,000 catalogs which the defendant used at the Miami Convention. *Thormer v. Mail Order Co.*, 241 N.C. 249, 85 S.E. 2d 140.

The plaintiff's complaint is broad enough to support a recovery either on an express contract or on the *quantum meruit*. The following statement from McIntosh, North Carolina Practice and Procedure, Second Edition, Section 1133, is applicable to the instant case:

> "Under the code the complaint may allege an express contract or the allegations may be so general as, under the liberal construction rule, to allow a recovery upon either the express or implied contract. 'This, however, is a slovenly mode of pleading, tolerated, but not approved, as the cases cited will show.' The orderly method of pleading would be to state the express contract and the implied contract separately, or to state the express contract as an inducement or explanation of the implied contract and that defendant received the benefits."

Before the question of damages is reached in this case it is necessary to determine whether the catalogs which the plaintiff produced conformed to the proof approved by the defendant's president. If they did, the next question is: Had plaintiff and defendant agreed upon the price? If no agreement as to price had been reached, then what was a reasonable price? If the catalogs did not conform to the printer's proof, what was the reasonable value of the 1,000 delivered?

The disputed questions of fact in this case could not have been brought into sharp focus by the one issue, "What amount, if any, is the plaintiff entitled to recover of the defendant?" Before the jury can decide the amount of plaintiff's recovery, it must resolve the issues of fact upon which that question depends. In cases where the evidence requires a charge on both express and implied contract, separate issues should be submitted. *Hatcher v. Dabbs,* 133 N.C. 239, 45 S.E. 562. "It is error to submit the single issue, 'How much, if anything, is the plaintiff entitled to recover?' if other issues are raised, since this leaves out the controverted facts upon which the right to recover is based." McIntosh, North Carolina Practice and Procedure, Second Edition, Section 1353. The defendant should have tendered issues applicable to its defense and noted an exception had the judge then refused to submit them. *Greene v. Greene,* 217 N.C. 649, 9 S.E. 2d 413.

His Honor correctly charged the jury that plaintiff contended he was entitled to recover the amount of the invoice for which he sued, but he did not tell them what facts it would be necessary to find in order to return such a verdict. Likewise, he never told the jury what findings would require them to answer the one issue *NOTHING,* but he told them the defendant contended that *NOTHING* should be their verdict. Having accepted and used 1,000 of the catalogs, the defendant was not entitled to this contention.

We have been unable to rationalize the theory upon which this case was presented to the jury. It may be that the court was misled by the failure of the defendant to tender issues which embraced its defense. Furthermore, the judge may have concluded that the general allegation of "serious omissions and difficulties" in the catalog was insufficient to raise an issue as to whether the printed catalog conformed to the proof. "The defendant relying on a breach by plaintiff as a defense must allege it as well as the facts constituting it, and he must deny plaintiff's allegations of due performance." 17 C.J.S., Contracts, Section 552. *Bank v. Fidelity Co.*, 126 N.C. 320, 35 S.E. 588. However, plaintiff makes no point that the answer was insufficient to admit defendant's evidence that the finished catalog did not conform to the proof.

The defendant assigns as error that portion of the charge in which his Honor instructed the jury as follows: "The law does not provide and does not allow this defendant to take 25% of the product and decline the other where it is shown that that rejected is the same quality as that accepted."

This was error requiring a new trial. The plaintiff knew that defendant required a certain number of catalogs in time for the Miami Convention. A thousand catalogs were printed and delivered for that specific purpose. The defendant, within thirty minutes after they were delivered, informed plaintiff that the page numbers had been omitted and asked him to stop the printing of the others. Under these circumstances, the fact that defendant in an emergency used the 1,000 catalogs would not waive his right to reject the others. Of course, the plaintiff contends that the proof which defendant had approved did not contain page numbers. This was one of the issues of fact for the jury to resolve under proper instruction from the court.

By assignments of error 20, 21, and 22, the defendant contends that the trial judge failed to apply the law to the evidence as required by G.S. 1-180, in that he failed to instruct the jury in substance as follows:

(a)   "(I)f the advertising matter was in accordance with their agreement, in the absence of stipulation as to price, the defendant was obligated to pay the reasonable value thereof; . . . ."

(b)   " '(P)laintiff's right to recover for materials and services rendered, not in accordance with contract, is restricted to such materials and services as were accepted and appropriated by defendant. As to these and these alone, defendant must pay, on the basis of *quantum meruit*; and the basis of liability therefore is quasi-contract, i.e., unjust enrichment, . . . .' "

---

---

(c)   " '(W)here plaintiff sues to recover for services rendered to defendant, failure to prove the alleged special contract to pay therefor precludes recovery thereon; but, where services so rendered are accepted by the defendant, plaintiff may recover therefor upon *quantum meruit*. The measure of such recovery, predicated on implied assumpsit, is the reasonable value of the services so rendered by plaintiff and accepted by defendant,'. . . ."

The duty to give these instructions arose on the evidence in this case. *Thormer v. Mail Order Co., supra.* They were not given.

For the reasons stated there must be a

New trial.