ALLEN MacEACHERN D/B/A ACCESS v. ROCKWELL INTERNATIONAL COR-
PORATION

No. 7810DC463

(Filed 1 May 1979)

1. **Contracts §§ 2.1, 27.1— referral by employment agency—applicant later hired
for different position—no contract for employer to pay fee**

   Where defendant in effect made an oral offer to pay for plaintiff employ-
   ment agency's services in providing defendant with an applicant which it
   would hire as a "systems analyst," no contract was formed when plaintiff pro-
   vided an applicant who was not hired by defendant as a "systems analyst," and
   defendant was not obligated by contract to compensate plaintiff when it hired
   such applicant several months later as a "material requirements planning
   engineer."

2. **Quasi Contracts § 2.1— referral by employment agency—applicant later hired
for different position—no recovery in quantum meruit**

   Plaintiff employment agency was not entitled to recover a fee under the
   theory of *quantum meruit* for its services in referring to defendant an appli-
   cant for the position of "systems analyst" who was not hired for that position
   but was hired by defendant some months later for the different position of
   "material requirements planning engineer" where the two positions required
   different experience, education and responsibilities; the applicant's employ-
   ment by defendant came about because he made a favorable impression that
   prompted defendant to seek his services when a job became available for
   someone with his qualifications; and no circumstances were shown from which
   it could be inferred that the services were rendered and received with the
   mutual understanding that payment would be made for those services.

APPEAL by plaintiff from *Barnette, Judge.* Judgment entered
31 January 1978 in Superior Court, WAKE County. Heard in the
Court of Apeals 28 February 1979.

Plaintiff, trading as "Access Personnel Recruiters" (Access)
filed suited against Rockwell International Corporation (Rockwell)
after Rockwell refused to pay plaintiff for services allegedly
rendered on an implied contract with defendant to pay for serv-
ices in recruiting Mr. Greg Poupard who was later employed by
defendant. Plaintiff contends he is entitled to a fee of $3,060 plus
interest from 7 February 1977. Defendant denies the existence of
a contract with plaintiff. In the alternative, defendant alleges that
even if there were a contract, plaintiff is not entitled to the fee
because the agreement was that plaintiff would be entitled to its
fee only if defendant hired Mr. Poupard for the position for which

he was recruited — "Systems Analyst". Defendant contends that Mr. Poupard was not qualified for the position of "systems analyst", but admits that several months later he was hired to fill a position as a "Materials Requirements Planning Engineer — Materials", which became available subsequent to the time Poupard was interviewed for the job as systems analyst.

Both plaintiff and defendant filed motions for summary judgment. Following a hearing on the motions on 20 January 1978, the trial court denied plaintiff's motion and entered judgment for defendant. Plaintiff appeals.

Other facts necessary for this decision are summarized in the opinion below.

*Brenton D. Adams and Savage and Godfrey, by David I. Godfrey, for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, by William M. Trott, for defendant appellee.*

MORRIS, Chief Judge.

The facts in this case are essentially undisputed. The affidavits filed in support of the parties' motions for summary judgment establish that in August or September of 1975, William R. Decker, Assistant Personnel Manager at Rockwell during the time in question, talked with William J. McCombie, then an agent of plaintiff, concerning Rockwell's need for a "systems analyst". Decker's affidavit indicated that he described Rockwell's needs as follows:

> "4. I discussed with Mr. McCombie the fact that we needed someone with working knowledge of computer programming languages, preferably COBOL, BAL, Fortran, and Terminal Programming languages and operation. Also I indicated that the job called for a working knowledge of computers, computer peripherals and communication devices and techniques, with strong emphasis on the IBM 360 and 370 series and System/3."

These facts are undisputed. As a result of this conversation, McCombie contacted Greg Poupard, prepared a resume of his qualifications, and arranged an interview for Poupard with

Rockwell. After the interview, it was determined by Decker and the manager of Rockwell's information systems that Poupard was not qualified for the job of "systems analyst". The job was offered to another applicant on 10 November 1975, but that applicant did not accept the employment with Rockwell. Not until 1 March 1976 was Rockwell able to fill the position available for a "systems analyst". In July of 1976, however, Poupard was employed by Rockwell as a "Materials Requirements Planning Engineer — Materials" in the Systems and Materials Requirements Planning Department. Defendant admits that it referred to the resume of Poupard, prepared in connection with Poupard's application for systems analyst, when it was seeking an applicant to fill the position of "Materials Requirements Planning Engineer" which had become available several months after Poupard's initial referral and interview.

[1] Plaintiff contends that he is entitled to compensation from defendant essentially because he was the procuring cause of defendant's employment of Poupard. *See e.g., Automated Personnel International of New Orleans, Inc. v. Thomas,* 293 So. 2d 669 (La. App. 1974); *H. B. Dawson's, Inc. v. Cherney,* 256 So. 2d 294 (La. App. 1971). Compare the contract in *Management Recruiters of New Orleans v. Brown,* 339 So. 2d 536 (La. App. 1976). Furthermore, in an analogy to traditional real estate brokerage contracts, plaintiff contends that he was entitled to his commission upon providing Rockwell with an applicant who was ready, willing, and able to fill the position as "systems analyst". The short answer to plaintiff's contentions is that he did not so contract. There is no doubt that plaintiff was free to negotiate a contract for services with defendant containing any terms to which the parties would assent. For example, plaintiff could have reached an agreement with Rockwell that compensation would be due plaintiff if he was the "procuring cause" of Poupard's employment. Such an agreement was reached in both *Automated Personnel v. Thomas* and *Dawson's v. Cherney, supra.* Similarly, as in *Peter L. Redburn, Inc. v. Alaska Airlines, Inc.,* 20 Wash. App. 315, 579 P. 2d 1354 (1978), plaintiff could have provided defendant with applicants on the condition that its fee would become due if the applicant referred by him was hired within one year from the date of reference, regardless of whether he was the procuring cause of such employment.

The facts of this case indicate that the communications and actions *inter se* the parties were insufficient to create a contract either express of implied in fact. The communications between Decker and McCombie at best amounted to an offer by Rockwell for a unilateral contract. See discussion in *Automated Personnel v. Thomas, supra.* The offer is for a promise to pay for services in return for the performance of an act. The difficulty in this case centers around determining the precise act necessary for an effective acceptance of the offer. It is a fundamental concept of contract law that the offeror is the master of his offer. He is entitled to require acceptance in precise conformity with his offer before a contract is formed. *See Morrison v. Parks*, 164 N.C. 197, 80 S.E. 2d 85 (1913). And when the offer so provides, it may be accepted by performing a specific act rather than by making a return promise. *See Koppers Co., Inc. v. Chemical Corp.*, 9 N.C. App. 118, 175 S.E. 2d 761 (1970).

In our opinion, the conversations between Decker and McCombie amounted to an offer empowering Access to accept by providing Rockwell with an applicant which it would hire as a "systems analyst". Had Access so performed, we would find no difficulty in implying in fact an obligation on the part of Rockwell to pay for those services despite the absence of specific negotiations with respect to compensation. Nevertheless, by failing to provide an applicant which was hired by Rockwell as systems analyst, Access failed to make an effective acceptance of Rockwell's offer. Therefore, no contract was formed and Rockwell was not obligated by contract to compensate Access.

[2]    Nevertheless, it is recognized in this State that when a party claiming under a contract alleges and proves acceptance of services and the value thereof, he generally may go to the jury on *quantum meruit*, the measure of any recovery to be the reasonable value of the services rendered by plaintiff and accepted by defendant. *See Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964); *Yates v. Body Co.*, 258 N.C. 16, 128 S.E. 2d 11 (1962); *Freeman v. Development Co.*, 25 N.C. App. 56, 212 S.E. 2d 190 (1975). Plaintiff urges this Court that if no obligation is imposed upon Rockwell to pay for the services of Access in this case, employers would open the door to fraud upon employment agencies by regularly hiring applicants for jobs other than those for which they were referred. In this case, although plaintiff

alleges no bad faith on the part of defendant, he suggests that the distinction between the position for which Poupard was referred and the position for which he was ultimately hired was a distinction without a difference. We cannot accept plaintiff's contention. The affidavit of Doug Garrett, Rockwell's current personnel manager makes apparent the fundamental differences in the experience and educational qualifications as well as the different job responsibilities for each position. Because these differences lie at the heart of this matter, we quote at length from Garrett's affidavit:

"6. The functions of the two jobs are substantially different. The general description of the Systems Analyst position is as follows: to be responsible, under the direction of the Supervisor of Information Systems, for the auditing, analyzing, planning, development, coordination, implementation and maintenance of business and technical systems. The general description of the Material Requirements Planning Engineer—Materials position is as follows: to perform activities contributing to the development, installation, and implementation of the Material Requirements Planning Systems under the management and direction of the Manager, Systems and MRP.

7. Insofar as educational background is concerned, one of the job requirements for the Systems Analyst job is that the applicant have, in addition to a Bachelor's degree, technical training in business application of computer processing. There is no such job requirements with respect to the Material Requirements Planning Engineer—Materials position.

8. There are also differences between the two types of jobs with respect to the salary range. The salary range for a Material Requirements Planning Engineer—Materials is from $1,134.00 a month to $1,701.00 per month. The range for a Systems Analyst, however, is from $1,286.00 per month $1,929.00 per month. Thus, the Systems Analyst who is at the maximum salary range makes $2,736.00 more per year than the Material Requirements Planning Engineer—Materials who is also at the maximum salary range. This difference in pay reflects a difference in the background duties and responsibilities of the two jobs.

9. The person in the Systems Analyst job reports to the Supervisor of Information Systems Section whereas the person in the MRP job reports to the Manager, Systems and Material Requirements Planning. In addition to the difference between the two jobs with respect to the person to whom to report, there is a difference with respect to the supervisory responsibilities of the two jobs. The person in the MRP job does not supervise anyone, but the person in the Systems Analyst job coordinates Information Systems personnel.

10. Additionally, the Systems Analyst must have a working knowledge of computer programming languages, preferably COBOL, DAL, RPG II, Fortran and Terminal Programming Languages and Operation. Furthermore, the Systems Analyst must have a working knowledge of computers, computer peripherals and communication devices and techniques with strong emphasis on the IBM 360 and 370 series and System/3. There are not prerequisites for the MRP job."

We reject any basis for recovery on the principles of *quantum meruit*. The burden rests upon plaintiff to show circumstances from which it may be inferred that the services were rendered and received with the mutual understanding that payment would be made for those services. *Johnson v. Sanders*, 260 N.C. 291, 132 S.E. 2d 582 (1963). Plaintiff has produced no evidence from which it can be inferred that Rockwell understood that it would be obligated to pay Access even though Poupard was hired several months later for a different job.

We note that employment agency contracts and business opportunity broker contracts generally provide for compensation if the agency or broker is the procuring cause of the opportunity. *See generally Industrial Maintenance Cleaning Contractors, Inc. v. Sales Consultants of New Orleans, Inc.*, 342 So. 2d 377 (Ala. Civ. App. 1977); *Annot.*, 61 A.L.R. 3d 375 (1975). *See also Annot.*, 24 A.L.R. 3d 1160 (1969). However, merely because an agency has at some time brought an employer and employee together does not entitle the agency to a fee. Indeed, in *Automated Personnel International v. Thomas, supra*, a case similar to the case *sub judice* which arose in Louisiana, an *applicant* and agency entered into an express contract which obligated the applicant to pay a fee for "satisfactory employment procured." That Court correctly

MacEachern v. Rockwell International Corp.

stated, while concluding that the applicant was not required to pay a fee when he was hired as a data processing programmer four and one-half months after he was referred to the employer and interviewed for the position as personnel manager, that "a referring employment agency does not become the part-proprietor of either employer or employee". 293 So. 2d at 671. The following comments by that court are equally applicable to this case:

"The new employment came about because . . . the impression defendant made in person caused the employer later to remember him favorably for a [job requiring different qualifications].

The only connection plaintiff had with the employment is that it prompted the first interview . . . . This was not an acceptance of defendant's offer to pay a fee for procuring employment, but merely a nonproductive attempt towards acceptance." *Id.*

The reasoning in that case, although applying to an express contract, leads us to the conclusion that there also could be no recovery under *quantum meruit.* Because Poupard apparently made the personal impression that prompted Rockwell to seek his services when a job became available for someone with his qualifications, it cannot be said that Rockwell so benefited from the services of Access as to create an obligation implied at law to pay the fee, or to prompt the recognition of a quasi-contractual obligation because of any unjust enrichment of Rockwell.

For the foregoing reasons, the order of the trial court entering summary judgment in favor of defendant is

Affirmed.

Judges CLARK and ARNOLD concur.