MANAGEMENT RECRUITERS OF MARYSVILLE, INC., APPELLANT, *v:* BROWN GROUP RECREATIONAL PRODUCTS, INC., APPELLEE.

---

(No. 14-84-22—Decided
. September 25, 1986.)

*Gingher & Christensen, Daniel G. Hale* and *John M. Mahota,* for appellant.
*Gongwer, Shafer & Auten* and *Anthony R. Auten,* for appellee.

MILLER, J. This is an appeal by the plaintiff, Management Recruiters of Marysville, Inc. (hereinafter "Management"), from a judgment of the Court of Common Pleas of Union County finding that the defendant, Brown Group Recreational Products, Inc. (hereinafter "Brown"), did not owe Management an employment agency fee.

The matter was submitted to the trial court on the pleadings, admissions, interrogatories, exhibits, stipulations, and memoranda of the parties. In its judgment entry the trial court indicated that all the pertinent facts are included in the stipulations.

According to the stipulations, in the fall of 1981 the Vice President/General Manager of Brown, Jeff Carlson, and its Director of Industrial Relations, Ed Houska, decided to look for a person to fill the position of vinyl production manager in Brown's plant.

On November 10, 1981, one of Management's account executives, John Mitchell, called Houska to inquire about Brown's need for a management-level applicant. Houska told Mitchell that Brown was looking for someone to fill the position of vinyl production manager. Houska gave Mitchell authority to refer applicants for this position and provided him with its specifications. In addition, Houska knew that any fee to which the agency would be entitled was to be paid by the employer.

On that same date, Mitchell contacted James Braeunig and discussed the vinyl production manager position with him. At Mitchell's request, on November 12, 1981, James Braeunig provided Mitchell with his resume.

On the following day, Mitchell wrote to Houska and enclosed a copy of James Braeunig's resume along with a copy of Management's "Employer-Paid Fee Policy." Carlson was given a copy of the resume on which he made the notation "Let's talk."

On November 25, 1981, Houska asked Mitchell to have James Braeunig call him at home to discuss the vinyl production manager position. After several phone conversations between Houska and James Braeunig, they mutually agreed that the latter was overqualified for that position.

James Braeunig informed Mitchell of this but also mentioned that his brother, Dave Braeunig, might be interested in this position.

Mitchell then contacted Dave Braeunig by phone and discussed the vinyl production position with him. At Mitchell's request, Dave Braeunig forwarded his resume. On December 7, 1981, Mitchell sent a letter to Houska enclosing Dave Braeunig's resume.

An interview with Dave Braeunig by Carlson was arranged by Mitchell through Houska. On January 6, 1982, Mitchell wrote to Houska.

On January 15, 1982, Dave Braeunig was interviewed by Carlson for the position of factory manager with Brown. At this interview Carlson and Dave Braeunig decided that the latter was not well-qualified for the factory manager position. There is no evidence

that James Braeunig's name came up in the conversation.

Later that day, Dave Braeunig contacted his brother, James Braeunig, and told him that a new position, that of factory manager, was open at Brown's plant. On January 16, 1982, James Braeunig called Carlson and expressed interest in that position and a personal interview was arranged. James Braeunig did not inform Management of his call to Carlson. On January 19, 1982, Carlson interviewed James Braeunig and decided he was the man for the factory manager position.

On January 22, 1982, Mitchell called Carlson concerning his interview with Dave Braeunig and Carlson indicated that he liked Dave Braeunig but that he had not yet reached a decision on hiring him for for any position. On January 26, 1982, Carlson called Mitchell to say that Dave Braeunig was no longer being considered for any position with Brown.

Management was unaware of any discussion between James Braeunig and Brown concerning the factory manager position until February 17, 1982 when Mitchell heard that Brown had hired James Braeunig and he had started work on February 8, 1982. Mitchell called Carlson to confirm the hiring. Management billed Brown $9,600 which was thirty percent of James Braeunig's gross annual compensation. Brown refused to pay the fee and Management filed a complaint to recover its fee, reasonable attorney fees, statutory interest, and costs.

As stated above, the matter was submitted to the trial court which ruled in favor of defendant, Brown. It is from this judgment that plaintiff appeals asserting two assignments of error.

Assignment of error number one:

"The trial court erred in not finding that defendant-appellee owed a fee for the placement of an employee to plaintiff-appellant."

It is stated in 27 American Jurisprudence 2d (1966) 471, Employment Agencies, Section 7:

"* * * The services of an employment agency are considered rendered at the time the employee is accepted and hired, and the fee is ordinarily earned at that time. * * *"

In its decision and judgment entry the trial court found as pertinent:

"The Court finds the Defendant offered to Plaintiff that if Plaintiff provided a person to fill the job of Vinyl Production Manager, then Defendant would pay Plaintiff's normal commission rate. This is an offer of a unilateral contract which can be accepted by the act of providing the person so employed.

"The acceptance of the contract would be providing a person for the position of Vinyl Production Manager. None was provided by the Plaintiff. The fact one who had several months before been considered for that position and [was] later hired in another position does not meet the offer, and is not an acceptance that ripens the offer into a binding contract. See, *Bretz* v. *The Union Central Life Insurance Company,* 134 Ohio St. 171.

"The stipulations show that James Braeunig was hired as Plant Manager because his brother from New Jersey had told him that job was open and James called Mr. Carlson who thereafter hired James Braeunig as Plant Manager. So far as the stipulations go, Plaintiff has not provided a Vinyl Production Manager to Defendant. Defendant does not owe Plaintiff under the theory of either implied contract or quantum meruit as Plaintiff was not the direct procuring cause of the hiring of James Braeunig as factory manager, and there was no discussion concerning that position.

"* * * *"

We find no Ohio cases dealing directly with the issue of whether an employment agency is entitled to a fee for submitting to a potential employer the resume of a person for a particular position but who was eventually hired by the employer on the basis of the person's independent inquiry regarding a different position. However, there are cases from other jurisdictions which we find persuasive in this matter.

These other jurisdictions have determined such a situation to create a unilateral contract.

In *MacEachern* v. *Rockwell Internatl. Corp.* (1979), 41 N.C. App. 73, 76, 254 S.E. 2d 263, 265, the court stated:

"* * * The offer is for a promise to pay for services in return for the performance of an act. The difficulty in this case centers around determining the precise act necessary for an effective acceptance of the offer. It is a fundamental concept of contract law that the offeror is the master of his offer. He is entitled to require acceptance in precise conformity with his offer before a contract is formed. * * *"

In the instant case Brown is the offeror and Management is the offeree since it inquired and requested permission to submit applicants to fill the position of vinyl production manager at Brown.

In *Bretz* v. *Union Central Life Ins. Co.* (1938), 134 Ohio St. 171, 175-176, 11 O.O. 587, 588, 16 N.E. 2d 272, 274, the Supreme Court stated:

"Acceptance of an offer to enter into a unilateral contract can be effected only by performance of the condition prescribed and within the time fixed. * * * Nothing less than performance will tender acceptance, and until such time the right to revoke remains unimpaired. * * *."

Also, other jurisdictions analogize the situation to a real estate broker's claim for a commission. See *Nicastro Associates, Inc.* v. *C. F. Wooding Co.*

(1985), 5 Conn. App. 244, 497 A. 2d 1020.

Paragraphs one and two of the syllabus of *Bauman* v. *Worley* (1957), 166 Ohio St. 471, 2 O.O. 2d 473, 143 N.E. 2d 820, state:

"Before a real estate broker without an exclusive listing is entitled to collect a commission for the sale of property he must show that he was the 'procuring cause' of the sale.

"The term, 'procuring cause,' as used in describing a broker's activity, refers to a cause directly originating a series of events which *without break in their continuity* directly result in the accomplishment of the prime objective of the employment of the broker, namely, the producing of a purchaser ready, willing and able to buy real estate on the owner's terms." (Emphasis added.)

Using such an analogy, the plaintiff employment agency would have to establish that it was the procuring cause of the actual employment of the particular employee in order to collect its fee. In the instant case, Management would have to prove that it was the procuring cause of the employment of James Braeunig as factory manager at Brown in order to collect its placement service fee.

Management did originally refer James Braeunig to Brown for the position of vinyl production manager. However, it was later, through independent inquiry, that James Braeunig was hired by Brown to fill the position of factory manager.

In *Automated Personnel Internatl. of New Orleans, Inc.* v. *Thomas* (La. App. 1974), 293 So. 2d 669, 671, that court stated:

" * * * A referring employment agency does not become the part-proprietor of either employer or employee, and the agency is not entitled to a fee on future employment

unless it shows that it 'procured' the employment."

The only connection Management had with James Braeunig's employment as factory manager is that it prompted the initial phone interview for the vinyl production manager position. "However, merely because an agency has at some time brought an employer and employee together does not entitle the agency to a fee." *MacEachern* v. *Rockwell Internatl. Corp., supra,* at 78, 254 S.E. 2d at 267.

The trial court properly concluded that there was not an acceptance so as to ripen into a binding contract since the act requested of the plaintiff, the filling of the vinyl production manager position at Brown, was not performed and that the plaintiff was not the procuring cause of the hiring of James Braeunig as factory manager.

The trial court also properly concluded that the plaintiff is not entitled to compensation on the theory of quantum meruit.

Appellant's first assignment of error is not well-taken.

Appellant's second assignment of error:

"The trial court erred in not admitting evidence of statutory interpretation offered by plaintiff-appellant."

Included in the record is a proffered exhibit, the affidavit of Luther Yates, Chief of the Division of Licensing, Department of Commerce of the state of Ohio.

This cause was submitted to the trial court on the pleadings, admissions, interrogatories, exhibits, stipulations, and memoranda of the parties and this purported affidavit is not included therein. The trial court was not called upon to rule on the admission of evidence.

Appellant's second assignment of error is not well-taken.

Finding no error of the trial court prejudicial to appellant as assigned and argued we affirm the trial court's judgment.

*Judgment affirmed.*

GUERNSEY, P. J., and COLE, J., concur.