OPINION
On September 11, 1998, Precision Concepts Corporation ("Precision") filed a complaint in the Franklin County Court of Common Pleas against General Employment Triad Personnel Services, Inc., General Employment Enterprises, Inc., Triad Personnel Services, Inc. dba General Employment Triad Personnel Services, Inc. and John Doe dba General Employment Triad Personnel Services, Inc. (hereinafter collectively referred to as "General Employment"). The complaint sought a declaration, in part, that there was no contractual relationship between Precision and General Employment. General Employment filed an answer and a counterclaim which set forth claims on an account and for breach of contract, unjust enrichment and quantum meruit.
The claims arose out of the dealings between Precision, a business engaged in the sale of computer hardware and software products and services, and General Employment, an employment agency. General Employment contacted Precision regarding a job opening at Precision. General Employment sent a potential employee, Tavery Tan, to Precision for an interview. Precision eventually hired Ms. Tan, and a dispute arose regarding the fee owed to General Employment for procuring Ms. Tan.
On October 28, 1999, General Employment filed a motion for summary judgment. On November 1, 1999, Precision filed a motion for partial summary judgment. The parties filed the appropriate memoranda contra and replies. On December 10, 1999, the trial court rendered a decision. The trial court stated it was clear that General Employment had made an offer to Precision to provide services and had made known the terms of such offer. The trial court further indicated that Precision accepted the offer through its acts. Accordingly, the trial court concluded that General Employment was entitled to judgment. A judgment entry was journalized on January 4, 1999, denying Precision's motion for partial summary judgment, dismissing Precision's complaint, and granting judgment in favor of General Employment for $17,624.99.
Precision (hereinafter "appellant") has appealed to this court, assigning the following as error:
 I. The Trial Court Erred As A Matter Of Law By Misapplying The Precedential Holding Of The Tenth District Court Of Appeals In Source Services Corp. v. Capital Data Systems, Inc., (Ohio App. 10th_Dist.) 1990 WL95371, Unreported, No. 89 AP-1406.
 II. The Trial Court Erred As A Matter Of Law By Weighing The Evidence And Not Determining Whether There Was a Genuine Issue For Trial.
Appellant's assignments of error are interrelated and, therefore, will be addressed together. The issues before us are in the context of summary judgment. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
Appellant contends, in essence, that there are genuine issues of fact as to whether or not the parties agreed on the fee to be paid General Employment (hereinafter "appellee") for procuring Ms. Tan. Appellee asserts it informed appellant that its fee for procuring an employee was one-third of the employee's first-year salary. Appellant contends it told appellee prior to hiring Ms. Tan that such fee was excessive. Appellee argues that appellant nonetheless hired Ms. Tan with knowledge of the fee charged by appellee and, therefore, was obligated to pay appellee one-third of Ms. Tan's first-year salary.
To prove the existence of a contract, the elements of mutual assent (generally, offer and acceptance) and consideration must be shown. Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11. It must also be shown that there was a meeting of the minds and that the contract was definite as to its essential terms. Id. See, also, Episcopal Retirement Homes, Inc. v. Ohio Dept. ofIndus. Relations (1991), 61 Ohio St.3d 366, 369. Manifestation of mutual assent requires each party make a promise or begin to render a performance. McSweeney v. Jackson (1996), 117 Ohio App.3d 623,631. Such manifestation of assent may be made wholly or partly by written or spoken words, or by other acts or the failure to act. Id. Acceptance of an offer may be expressed by word, sign, writing or act. Nilavar at 12.
As indicated above, the dispute in the case at bar centers on the fee allegedly owed by appellant to appellee for procuring Ms. Tan. Appellant asserts it never agreed to pay a fee equaling one-third of Ms. Tan's first-year salary. The facts, construed most strongly in favor of appellant, establish the following. Appellant placed an ad in the newspaper indicating its desire to hire a senior applications developer. (Anthony deposition at 8-9; Molitors affidavit). Charles E. Anthony, Jr., employed at Precision at the pertinent time, was the professional services manager and was contacted by appellee. (Anthony deposition at 8.) Appellee's representative told Mr. Anthony that it had an applicant for the position. Id. Mr. Anthony and the representative discussed the applicant's qualifications, and appellee sent appellant the applicant's resume. Id. at 8, 10.
Mr. Anthony testified that appellee informed him that it charged a fee of around thirty-three percent. Id. at 11. Mr. Anthony told appellee that appellant did not generally pay that percentage and asked if the fee was negotiable. Id. Appellee's representative responded that the fee was not negotiable. Id.
On July 3, 1998, appellee's representative, Jasbir Sahota, sent a fax to Mr. Anthony informing him that the applicant, Tavery Tan, would be at appellant's office on Monday, July 6, 1998. On that Monday, Ms. Tan interviewed with Mr. Anthony. Id. at 13. On that same day, appellant was faxed a fee schedule from appellee setting forth the terms and conditions should appellant hire Ms. Tan. The fee schedule contained a fee of one-third of the successful applicant's first-year salary. Such fee schedule was never signed by a representative of appellant.
After Ms. Tan's interview with Mr. Anthony, he recommended that she be hired. Id. Mr. Anthony told appellant's president and co-owner, Robert W. Molitors, that he would like Ms. Tan to be hired but that he could not recommend hiring her if appellant had to pay the one-third fee. Id. 14; Molitors deposition at 7-8. Mr. Anthony testified that he thought Mr. Molitors "* * * was looking to negotiate the fee down * * * and basically he told me to go ahead and proceed with it." (Anthony deposition at 15.) Mr. Anthony explained that he then continued the interview process with Ms. Tan and was going to have her "talk" to more people. Id. at 15-16. Ms. Tan was interviewed by another employee of appellant who also recommended she be hired.Id. at 16.
Ms. Tan was hired by appellant with an annual salary of $50,000. Id. at 18-19. Mr. Molitors testified that appellant extended an offer to Ms. Tan without negotiating a lower fee "[k]nowing that, hopefully, we could get to an agreement * * *." (Molitors deposition at 10.) Mr. Molitors further stated, "* * * we went ahead and made the offer thinking we could work out the negotiations." Id. Upon being asked if appellant ever negotiated a reduced fee, Mr. Anthony responded, "* * * I am not 100 percent sure. I wasn't that involved with it, but I got from the gist of the conversation that we were going to go ahead and proceed with the hire since there was no contract in place and afterward we would negotiate a better fee." (Anthony deposition at 16.)
Both Mr. Anthony and Mr. Molitors acknowledged that they were aware appellee charged a one-third fee for its services. Id. at 51; Molitors deposition at 23. However, Mr. Molitors testified that appellant had not signed any agreement and had not agreed verbally to any terms or conditions (relating to the fee). (Molitors deposition at 23.) In an affidavit, Mr. Molitors stated that appellant rejected appellee's contract terms.
As a factual matter, the above evidence establishes that Mr. Molitors did not believe appellant had an agreement with appellee regarding the fee amount. However, it does not follow that there was no binding contract. The undisputed facts lead this court to conclude that as a legal matter, a unilateral contract was formed between the parties.
A unilateral contract is one in which the promisor receives no promise as consideration for his or her promise.Bretz v. The Union Central Life Ins. Co. (1938), 134 Ohio St. 171,174. By the promisor's offer, no obligation is imposed upon the offeree — only a condition, the performance of which is entirely optional with the offeree. Id. at 175. As set forth in the Restatement of the Law 2d, Contracts (1981), Section 45(1), where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders the invited performance. Such an offer has often been referred to as an offer for a unilateral contract. Id. at Comment a. In such a situation, the contract is not formed until accepted by performance by the offeree. Stout v.M. Aron Corp. (May 13, 1993), Franklin App. No. 92AP-1179, unreported at 10. Consideration is not necessary prior to acceptance by performance and after acceptance, the obligation to pay becomes enforceable. Id.
We note that the concept of unilateral contracts has been applied in a case involving an employment agency and its fee for procuring an employee. See Management Recruiters ofMarysville, Inc. v. Brown Group Recreational Products, Inc.
(1986), 34 Ohio App.3d 72, 75, motion to certify overruled on January 21, 1987 (case No. 86-1890).
In the case at bar, appellee offered its services to appellant — the procuring of an employee. If appellant hired appellee's applicant, appellee's fee was one-third of the employee's annual salary. Appellant was under no obligation to interview and/or hire Ms. Tan. Appellant was aware of appellee's fee should Ms. Tan be hired. Appellant hired Ms. Tan and in doing so, accepted appellee's offer of procuring an employee for a one-third fee.
Appellant contends this court's decision in SourceServices Corp. v. Capital Data Systems, Inc. (July 10, 1990), Franklin App. No. 89AP-1406, unreported, is applicable to the case at bar and compels a conclusion that genuine issues of fact exist. We disagree. Source Services Corp. is distinguishable on its facts. In Source Services Corp., this court concluded there was a question of fact as to whether a contract existed between the parties. Id. at 4. Indeed, there were disputed facts as to whether or not a fee schedule was received by the employer and whether or not the employment agency was authorized to recruit potential applicants for the employer. Id. at 4-6. In the case at bar, the fee charged by appellee was known to appellant, and there is no dispute that Ms. Tan was referred to appellant by appellee and that appellant hired Ms. Tan pursuant to appellee's procurement of Ms. Tan.
The fact that appellant did not like the fee appellee indicated it would charge should appellant hire Ms. Tan does not preclude the finding of a binding contract. Appellant intended
and/or desired to negotiate the fee down; however, appellant never did so. Secretly held, unexpressed intent is not relevant to whether a contract is formed. Nilavar, supra, at 12. There is evidence that Mr. Anthony initially told appellee that its fee was too high; however, appellee informed Mr. Anthony that such fee was not negotiable. Again, appellant hired Ms. Tan with knowledge of the fee charged by appellee, and it did so without negotiating down such fee. Accordingly, a unilateral contract was formed when appellant hired Ms. Tan, and appellant became obligated to pay appellee a fee equal to one-third of Ms. Tan's first-year salary.
Given all of the above, summary judgment in favor of appellee was appropriate. Accordingly, appellant's assignments of error are overruled.
Having overruled appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________________ TYACK, J.
LAZARUS and DESHLER, JJ., concur.