IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1074

Filed: 15 September 2020

Watauga County, No. 18 CVS 414

BRIAN KENT BROWN and BROWN BROTHERS FARMS, Plaintiffs,

v.

BETWEEN DANDELIONS, INC., f/k/a REMODEL AUCTION, INC., Defendant.

Appeal by Plaintiffs from order entered 19 September 2019 by Judge R. Greg Horne in Watauga County Superior Court. Heard in the Court of Appeals 10 August 2020.

> *Miller & Johnson, PLLC, by Nathan A. Miller, for the Plaintiff-Appellant.*
>
> *Moffatt & Moffatt, PLLC, by Tyler R. Moffatt, for the Defendant-Appellee.*

BROOK, Judge.

Brian Kent Brown ("Kent Brown") and Brown Brothers Farms (collectively, "Plaintiffs") appeal the trial court's order granting summary judgment in favor of Between Dandelions, Inc. ("Defendant") and denying Plaintiffs' motion for summary judgment. We hold that the trial court erred in denying Plaintiffs' motion for summary judgment and granting summary judgment in favor of Defendant. Based on the parties' stipulation that there is no genuine issue of material fact with respect to Plaintiffs' claims, we reverse the order of the trial court.

I. Background

In October of 2007, Plaintiffs accepted two promissory notes from a predecessor entity of Defendant, Remodel Auction, Inc. ("Remodel Auction"). The promissory note accepted by Plaintiff Kent Brown was for $10,000, and the promissory note accepted by Mr. Brown on behalf of Brown Brothers Farms was for $20,000.

In February of 2008, Plaintiffs executed portions of two Subscription Agreements. The Subscription Agreements contemplated that Remodel Auction would be a party to them; however, Remodel Auction never executed its portions of the Subscription Agreements. Under the terms of the Subscription Agreements, the obligations owing under the notes to Plaintiffs were offered in exchange for common stock in Remodel Auction. Mr. Brown offered to purchase 100,000 shares in exchange for discharge of his $10,000 note, and Brown Brothers Farms offered to purchase 200,000 shares in exchange for discharge of its $20,000 note. Plaintiffs thereafter were issued 12,000 shares of Series "B" Preferred Stock in Remodel Auction, receiving two certificates reflecting ownership of these shares.

Between October 2007 and July 2018 when Plaintiffs initiated the present action, Defendant underwent a number of corporate changes, including several name changes, none of which are relevant to this dispute.

On 22 July 2018, Plaintiffs initiated this action to collect the amounts owing under the notes, alleging causes of action for breach of promissory note and breach of contract. Defendant answered on 2 November 2018.

On 19 June 2019, Defendant moved to substitute the defendant named in Plaintiffs' complaint, Appalachian Mountain Brewery, Inc., with Defendant. Plaintiffs chose not to oppose this motion, joining a 1 July 2019 consent order substituting Appalachian Mountain Brewery, Inc. with Defendant.

On 19 June 2019 Defendant also moved for summary judgment, filing an affidavit in support of the motion by the former chief executive officer and majority shareholder of Defendant's predecessor entity, Remodel Auction, as well as a transcript of Mr. Brown's deposition. Plaintiffs filed a cross-motion for summary judgment on 6 September 2019, along with an affidavit in support by Mr. Brown.

The motions came on for hearing before the Honorable R. Greg Horne in Watauga County Superior Court on 16 September 2019. Judge Horne granted Defendant's motion and denied Plaintiffs' cross-motion by an order entered 19 September 2019. In its order, the trial court concluded that Plaintiffs' offer to purchase the shares in Remodel Auction constituted a cancellation of their notes under N.C. Gen. Stat. § 25-3-604(a) and a discharge of the obligations owed under the notes.

Plaintiffs timely appealed.

## II. Standard of Review

Issues of contract interpretation present questions of law, which we review de novo. *D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co., Inc.*, 174 N.C. App. 327,

330, 620 S.E.2d 887, 890 (2005). The issue of whether a valid contract exists also presents a question of law, which we review de novo. *See M Series Rebuild v. Town of Mount Pleasant*, 222 N.C. App. 59, 67-68, 730 S.E.2d 254, 260 (2012).

## III. Analysis

In their sole argument on appeal, Plaintiffs contend that their execution of the Subscription Agreements constituted an offer to exchange their promissory notes for stock in Remodel Auction—an offer Remodel Auction never accepted. Because the offer was not accepted by Remodel Auction and the shares in Remodel Auction received by Plaintiffs were not the shares Plaintiffs offered to purchase, Plaintiffs argue there was no contract to exchange the notes for the shares of stock and that the amounts owing under the notes are due and payable. We agree.

> In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, idem re et sensu, and their minds must meet as to all the terms.

*Dodds v. St. Louis Union Tr. Co.*, 205 N.C. 153, 156, 170 S.E. 652, 653 (1933) (internal citations omitted). An acceptance is not effective unless it is "(a) absolute and unconditional; (b) identical with the terms of the offer; (c) in the mode, at the place, and within the time . . . required by the offer." *Morrison v. Parks*, 164 N.C. 197, 197, 80 S.E. 85, 85 (1913) (citation and internal marks omitted). The offeror is thus said

to be "master of his offer." *MacEachern v. Rockwell Int'l Corp.*, 41 N.C. App. 73, 76, 254 S.E.2d 263, 265 (1979). As such, the offeror may "require acceptance in precise conformity with his offer[,]" and also may by the terms of the offer permit acceptance "by performing a specific act rather than by making a return promise." *Id.*, 254 S.E.2d at 265-66.

The Subscription Agreements executed by Plaintiffs both state as follows:

> This Subscription Agreement sets forth the terms under which the undersigned ("Investor") will invest in Remodel Auction, Inc., a Delaware corporation, ("Corporation"). This Subscription is one of a limited number of subscriptions for up to a maximum of 2,435,000 shares of common stock in the Corporation (the "Shares") in an aggregate amount of up to $243,500 offered on behalf of the Corporation to a limited number of Investors holding promissory notes issued by the Corporation (the "Notes"). Each Share is payable $0.10 by an agreement by the Investor by execution of this Subscription Agreement to cancel all amounts due under the Notes, including principal and all accrued and unpaid interest, upon execution of this Subscription Agreement. *Execution of this Subscription Agreement by the Investor shall constitute <u>an offer</u> by the Investor to subscribe for the Shares set forth in this Agreement on the terms and conditions specified herein. The Corporation reserves the right to reject such subscription offer, or, <u>by executing a copy of this Subscription Agreement, to accept such offer. If the Investor's offer is accepted, the Corporation will execute this Subscription Agreement and return an executed copy of the Subscription Agreement to the Investor.</u>*

(Emphasis added.)

The Subscription Agreement executed by Plaintiff Kent Brown goes on to state:

> Investor hereby subscribes for <u>100,000</u> (Number) of Shares for a total purchase price of $<u>10,000</u> (Number of Shares x $0.10) and hereby submits a Note with the principal and accrued interest amount of $<u>10,000</u> (Number of Shares x $0.10 per Share) to Remodel Auction, Inc. for full cancellation and satisfaction of said Note.

The Subscription Agreement executed by Mr. Brown individually additionally provides:

> THE NAME OF THE OWNER OF THE SHARE(S) SHOULD BE MADE OUT ON THE CERTIFICATE IN THE FOLLOWING MANNER (PLEASE PRINT):
>
> <u>Kent Brown</u>

The Subscription Agreement executed by Mr. Brown on behalf of Brown Brothers Farms likewise states:

> Investor hereby subscribes for <u>200,000</u> (Number of Shares for a total purchase price of $<u>20,000</u> (Number of Shares x $0.10) and hereby submits a Note with the principal and accrued interest amount of $20,000 (Number of Shares x $0.10 per Share) to Remodel Auction, Inc. for full cancellation and satisfaction of said Note.

The Subscription Agreement executed by Brown Brothers Farms additionally provides:

> THE NAME OF THE OWNER OF THE SHARE(S) SHOULD BE MADE OUT ON THE CERTIFICATE IN THE FOLLOWING MANNER (PLEASE PRINT):
>
> <u>Brown Bros. Farms</u>

Nobody signed either of the Subscription Agreements on behalf of Remodel Auction, and Mr. Brown testified at deposition that he never received the 300,000 shares referenced in the Subscription Agreements, nor did he ever receive copies of the agreements executed by anyone on behalf of Remodel Auction.

The former Chief Executive Officer and majority shareholder of Remodel Auction, Clinton F. Walker, averred in the affidavit filed in support of Defendant's motion for summary judgment that the 300,000 shares referenced in the Subscription Agreements were "delivered" to Plaintiffs by recording their ownership of the shares in the books maintained by the company, which existed in an Excel spreadsheet. Mr. Walker averred further that following a re-organization of Remodel Auction, Plaintiffs were issued 12,000 shares of Series "B" Preferred Stock in addition to the 300,000 shares of common stock previously "delivered" to them by recording their ownership in the company's books. At deposition Kent Brown testified that while he never received the 300,000 shares of common stock he offered to purchase, he did receive two share certificates representing 12,000 series "B" preferred shares in Remodel Auction; however, these shares were not the shares he offered to purchase, and he was unable to reach Mr. Walker to resolve the discrepancy between the 300,000 shares of common stock he offered to purchase and the 12,000 series "B" preferred shares for which received certificates, despite repeated attempts to do so.

Under the terms of the Subscription Agreements, the execution of each by Mr. Brown "constitute[d] an offer . . . to subscribe for the Shares set forth in [the] Agreement[s] on the terms and conditions specified [therein]." Those terms included that the subject matter of the offer was

> a limited number of subscriptions for up to a maximum of 2,435,000 shares of *common stock* in the Corporation (the "Shares") in an aggregate amount of up to $243,500 offered on behalf of the Corporation to a limited number of Investors holding promissory notes issued by the Corporation (the "Notes").

(Emphasis added.) No part of the offers by Mr. Brown and Brown Brothers Farms were to purchase 12,000 series "B" preferred shares in Defendant's predecessor entity; instead, as previously noted, Mr. Brown offered to purchase 100,000 shares of common stock in exchange for cancellation of $10,000 in promissory notes owed to him individually and Brown Brothers Farms offered to purchase 200,000 shares of common stock in exchange for cancellation of $20,000 in promissory notes owed to it. The terms of the Subscription Agreements also contemplated that the shares of common stock Plaintiffs were offering to purchase in exchange for cancellation of their notes were certificated securities, requiring Plaintiffs to indicate the manner in which "the name of the owner of the share(s) should be made out on the certificate[.]" (Capitalization removed.)

Defendant offers Mr. Walker's sworn statement that the ownership interests in Remodel Auction the Plaintiffs offered to purchase through execution of the

Subscription Agreements were uncertificated securities as Delaware law defines that term to support the idea that Mr. Walker's "delivery" of the 300,000 shares of common stock to Plaintiffs by recording their ownership in the company's books was an acceptance of Plaintiffs' offer by performance. Setting aside the absence of evidence that this acceptance was ever communicated to Plaintiffs prior to the filing of Mr. Walker's affidavit, and Mr. Brown's testimony that in essence he had no knowledge of this purported acceptance by performance, Mr. Walker's sworn statement that the subject matter of the Agreements were uncertificated securities is at best an admission that Remodel Auction was unable to accept Plaintiffs' offer or unable to perform the contract contemplated by the Subscription Agreements.[1] We hold that no valid contract existed to purchase the shares in Remodel Auction because there was no acceptance of Plaintiffs' offer to purchase the shares through execution of the Subscription Agreements by Remodel Auction; any attempted acceptance of Plaintiffs' offers by Remodel Auction by performance varied materially from the terms of Plaintiffs' offers and was therefore ineffective.

---

[1] Were it true that the ownership interests in Defendant's predecessor at the time qualified as uncertificated securities under Delaware law, as Mr. Walker has averred, this would not have provided any justification or excuse for accepting Plaintiffs' offer in a manner other than that contemplated by its terms. *See, e.g.*, *Beauford Cty. Lumber Co. v. Cottingham*, 173 N.C. 323, 329, 92 S.E. 9, 12 (1917) ("The acceptance . . . should have been in the terms of the offer, and, if it was not so, the plaintiff had the right to treat the offer as rejected[.]").

Defendant argues that Plaintiffs' offer to cancel their notes in exchange for stock is sufficient to constitute a cancellation or discharge under N.C. Gen. Stat. § 25-3-604(a). Under N.C. Gen. Stat. § 25-3-604(a),

> [a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

N.C. Gen. Stat. § 25-3-604(a) (2019). The trial court concluded that Plaintiffs' offer to cancel their notes through execution of the Subscription Agreements constituted a cancellation of the notes, drawing an equivalence between Plaintiffs' execution of the Subscription Agreements and full execution of the Subscription Agreements on the one hand—execution by Remodel Auction having never occurred—and between an offer to cancel a promissory note and an agreement to cancel a promissory note, on the other.

We hold that Plaintiffs' offer to cancel the notes in exchange for stock did not qualify as the "intentional voluntary act" required by N.C. Gen. Stat. § 25-3-604(a). Had Plaintiffs' offer to cancel the notes been accepted by Remodel Auction either through Remodel Auction's execution of the Subscription Agreements or performance according to the terms of Plaintiffs' offer, we would reach a different conclusion. N.C.

Gen. Stat. § 25-3-604(a) does not by its terms limit the voluntary act requirement to the acts it lists but the listed acts are all of a final and permanent character we believe differs fundamentally from an unaccepted offer. *See, e.g.*, N.C. Gen. Stat. § 25-3-604(a) (2019) (listing voluntary acts of "surrender," "destruction," "mutilation," "striking out," and "renouncing"). We hold that conflating an unaccepted offer to cancel the notes and a complete agreement to cancel the notes was error.

Defendant argues in the alternative that the obligations under the notes have been satisfied by payment under N.C. Gen. Stat. § 25-3-602, which provides that "an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument." N.C. Gen. Stat. § 25-3-602 (2019). According to Defendant, the "delivery" of the 300,000 shares by recording Plaintiffs' ownership in the books of Remodel Auction constituted a payment under N.C. Gen. Stat. § 25-3-602. The language of the promissory notes, however, does not provide for payment in shares of stock. The notes specify that payment is to be made to Plaintiffs in the quarterly amounts of $300 and $600 respectively, plus three percent interest until the obligations are satisfied. We therefore hold that the delivery of the 300,000 shares by recording Plaintiffs' ownership of them in the company's books did not constitute payment of the notes under N.C. Gen. Stat. § 25-3-602.

Defendant argues in the alternative that the doctrine of laches should apply as a bar to Plaintiffs' recovery on the notes because of Plaintiffs' delay in filing suit.

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). Despite Plaintiffs' delay in filing suit, we decline Defendant's invitation to apply the equitable doctrine of laches to Plaintiffs' claims. We do not believe Plaintiffs' delay was unreasonable. Furthermore, Defendant has not argued and we discern no particular prejudice this delay has caused Defendant.

## IV. Conclusion

We reverse the order of the trial court because Plaintiffs' offer to cancel their notes and discharge Defendant's obligations under the notes was never accepted and the amounts outstanding under the notes are due and payable, with interest.

REVERSED.

Judges BRYANT and STROUD concur.